Bond *v.* Montague and Montague *v.* Cummings.

BOND *v.* MONTAGUE AND MONTAGUE *v.* CUMMINGS.

(*Knoxville.* November 16, 1896.)

97  727
110  155
h110  156

1. SUPREME COURT. *Remanding cause.*

Two suits were heard together, in one of which the vendor sought to recover balance on purchase money note, and in the other the vendee sought to have the note canceled and to re-, cover for overpayments thereon. The chief contest was over a $1,000 credit, and upon the question of partial failure of title. Both questions were decided by the Chancellor and by the Court of Chancery Appeals against the vendee. The $1,000 was disallowed upon the facts and inferences drawn therefrom. The credit for failure of title was disallowed for want of pleadings. The vendor's testimony as to the $1,000 was confused and contradictory. The vendee had not pleaded failure of title on account of a misunderstanding.

*Held:* The decree should be reversed and the cause remanded for amendment of pleadings and further proof, this Court saying: "The questions of fact and law are so mixed and complicated, and the condition of the record so peculiar, that, were it an appeal from the Chancery Court direct, for an adjudication of the questions by us, without the intervention of the Court of Chancery Appeals, it would be hardly possible, with any certainty, to do justice between the parties." (*Post, pp. 728–737.*)

Code construed: § 4905 (S.); § 3889 (M. & V.); § 3170 (T. & S.).

2. COURT OF CHANCERY APPEALS. *Findings of.*

When the Court of Chancery Appeals sets out the facts fully in its finding, this Court draws its own inference and conclusion from the facts thus found, and is not concluded by the arguments or inferences of the Court of Chancery Appeals based thereon or drawn therefrom. (*Post, pp. 734–736.*)

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County. T. M. McConnell, Ch.

C. Marchbanks and W. T. Murray for Bond.

Wheeler & McDermott for Montague.

Clift & Cantrell for Cummings.

Snodgrass, Ch. J. Montague sold lands in Georgia to Bond for $25,000. One of the terms of the sale was that Bond should have credit for $1,000, which he had previously paid for the option to purchase the lands. When the final payment on the purchase money came to be made, a part of it was paid in cash, and for the remainder a note was executed, and subsequently various payments were made upon the note, and it was claimed that it was entitled to certain credits. The original bill was filed to have this note canceled as paid, and to have decree for $1,531.94, alleged overpayment. The second bill was filed by Montague, claiming a balance due on the transaction, and seeking to recover the same. The two causes involved a settlement between the parties arising out of the land trade, and were heard together. Among other questions raised by the bill of complainants, was their right to credit for $1,000, which had been first paid to Montague for the option, and which it was agreed should, if the trade was consummated, be applied on the purchase price for the lands. It was insisted that this had never been done. On this point the answer of Montague was as follows:

"The allegation made in said amended bill, that the $1,000 paid by J. P. Bond to this defendant

at the time the option was given him for the pur-chase of the lands mentioned in the pleading, was not credited upon the purchase price of the land, is untrue. The amount so paid was reckoned in and regarded as a part of the purchase money, and the amount represented by the note given by J. P. Bond, John and Thomas Cummings, and W. G. Morrison was the balance due after deducting the $1,000. The note of $9,273.15 should not be cred-ited with the $1,000 paid by Bond for the option, as it was then reckoned in as a part of the pur-chase money of $25,000 and interest, and, while this defendant has not seen the deposition given by him since it was taken, yet he is satisfied that nothing said by him in said deposition can be fairly construed as having a meaning inconsistent with what is contained in this answer to the amended bill.''

At the time of this payment of $1,000, a receipt therefor was executed by Montague, which is in the following words and figures, to wit:

'' Received of John P. Bond one thousand dollars, as part purchase money on the Cherokee property in Dade County, Georgia, which is to be placed as a credit upon the purchase price of twenty-five thousand dollars and interest from date of deed in the event the balance of the purchase money and interest is paid as follows, to wit: ten thousand dollars within sixty days and ten thousand in ninety days, and balance in six months. This September 26, 1889.

''T. G. MONTAGUE.''

This receipt was offered in evidence. The deposition of Montague was taken. His account of the transaction is confused and somewhat inconsistent, but he finally concluded his testimony on the question by the positive statement that this $1,000 did not make a part of the $25,000 payment for this land, and it was otherwise proved from the record that the $25,000 was fully paid by cash and notes, without taking this $1,000 into consideration. On this condition of facts the Chancellor decreed against the complainant, and in favor of Montague as to the $1,000 item. There were other questions made and put in issue as to the time when a particular credit as to lot No. 93 should have been given, and as to whether other credits should have been given on account of the failure of title. In respect to the question as to the time of payment as to lot No. 93, the decree was against complainants, and also as to the other credits resulting from failure of title.

From this decree the administrator of Bond and the defendant, Cummings, appealed. It should have been stated that some time after filing the original bill, Bond died, and the cause was revived in the name of his administrator. Bond and Montague were the parties between whom the transactions had been principally had. The amended bill, raising the question as to the $1,000 payment, was filed after the death of Bond and the deposition of Montague had been taken. On appeal, the Court of Chancery Appeals heard the case and affirmed the decree of

the Chancellor.   There was an appeal to this Court
and assignment of errors.   The Court of Chancery
Appeals decided that, in respect to failure of title
which had reference to lot No. 91, the purchasers,
Bond and Cummings, were entitled to no relief, be-
cause such defense was made only by answer and
not by cross bill.   The Court of Chancery Appeals
decided adversely to their contention, also, as to the
date at which the credit should be given as to lot
No. 93, and as to their claim for this $1,000.
They again appeal to this Court and assign errors.
On this point, as to their right to credit for the
$1,000, the Court of Chancery Appeals says:   "The
question whether the parties had been given credit
for the $1,000 option money, is the most difficult
to settle satisfactorily, and the difficulty grows out
of the testimony of Montague himself.   He swears
in his answer, and at one place in his deposition,
that he had given credit on the note for all pay-
ments made by the parties.   In another, he states that
all of the parties were present when the trade was
closed, that he did not know what amount each paid,
but that he received from them $15,716.25, but on
cross-examination as to when the $1,000 paid for
the option was credited on the purchase price, he
states, 'On the day the sale was concluded, November
27, 1889.'   In the very next question after the
above answer was given, he was asked if this $1,000
on the option was part of the $15,716.25 received
from them and answered, 'No, it was not.'   The

matter is left in this indefinite condition in his tes-
timony. Now, what is the common sense explanation
of this apparent contradiction or confusion?  .  .  .
In his answer preceding the last quoted above, Mr.
Montague does put the matter in a clear shape.
He says the parties were given credit for the $1,000
on the day the sale was concluded, November 27,
1889. In the next question, being asked, 'Was
this $1,000 paid on the option a part of this cash
payment?' answered, 'No, it was not.' This ap-
parent discrepancy or confusion is not explicable on
any theory or hypothesis of interest or discount sup-
ported by any evidence in the record. If the $1,000
deposited under the last option was credited on the
purchase price when the trade was closed, Novem-
ber 27, 1889, as Mr. Montague stated in his first
answer, his second answer must have been given in
reference to the preceding option, which had been
forfeited, and which, therefore, did not and was not
expected to enter into and form a part of the cash
$15,716.25 that was paid. As a matter of exact
literal accuracy, this was the only option that was
paid. In view of the lapse of time and the vari-
ous dealings of Mr. Bond with Montague in respect
to these lands, the credits that he demanded and
received, the others demanded and disputed, without
any mention of the failure to credit him with the
$1,000 now in issue, and the weighty fact that he
filed a bill claiming credits and the large overpay-
ment to Montague, without even suggesting that he

had not received credit for this $1,000, we feel impelled to the conclusion that the contention is not supported by the evidence of the whole record. In other words, we hold that the doubtful and apparently conflicting evidence of Montague in answer to two questions, one following the other, does not authorize us to find as a fact that these parties have not received credit for this $1,000.''

The Court of Chancery Appeals affirmed, as stated, the decree of the Chancellor as to lot No. 91. The language of the Chancellor in respect to that is this: '' The Court finds some proof in the record tending to show failure of title to lot No. 91, but as no eviction is shown under a superior title, and as no issue on this subject is made by the pleadings, the Court makes no adjudication upon this point.'' It appears, as already stated, that Montague's deposition had been taken when the amended bill was filed, and, to quote from the brief of his counsel, '' the testimony in these causes had been taken, and the causes were to be reached on the chancery docket within a day or two, when the amended bill, raising this question, was filed.'' Counsel adds: '' Perhaps we should have continued the causes and have retaken Montague's deposition, but the claim seemed to us absurd, and we chose to go to trial rather than continue.'' In the same connection, in the brief, it is added: '' In addition to the reasons given in our brief, and in the opinion of the Court, showing the incorrectness of this con-

tention, we desire to add another and conclusive one.''
Then follows a lengthy argument to show, and,
as the counsel insists, to demonstrate that this $1,000
was not in fact paid as a part of the $25,000, but
was paid as interest. In view of the facts which
we have seen in citation from the Court of Chan-
cery Appeals, this was distinctly repudiated by that
Court, and the decree of the Chancellor sustained
upon the theory that Montague's statement that this
$1,000 had not been paid on the $25,000 was a
mistake, and that he must have meant the other
$1,000, which had been in fact paid for the pre-
ceding option. Upon his own statement of facts,
found by the Court of Chancery Appeals, as a mat-
ter of law, we cannot apply the $1,000 to payment
or part payment of the $25,000, and leave the re-
mainder which these Courts decreed against defend-
ants. It appears from the opinion of the Court of
Chancery Appeals that the whole $25,000, so far
as paid at all, was paid otherwise than by this
$1,000. It could only have gone into Montague's
hands as payment, if at all, upon the theory which
the Court of Chancery Appeals distinctly repudiates
as a fact. Referring to the point as to which the
Chancellor refused to adjudicate because it was only
asserted in answer and not by way of cross bill,
defendant's excuse for not so putting it in issue is
to be found in the fact that they were misled prob-
ably by the understanding that they had an agree-
ment to the contrary, and that this loss, sustained

by them on account of defective title, should be credited upon the note. The finding of the Court of Chancery Appeals shows that the $25,000, so far as it has been settled, was paid without taking this $1,000 into consideration. They submit, in connection with it, an argument of much plausibility that this $1,000 must have been in some way settled between the parties in the transaction, because of the long acquiescence and the failure of Bond, in his lifetime, to raise any question that it had not been credited upon the $25,000 trade in some way. The excuse offered that Montague did not clear up the conflict in his evidence now attempted by his counsel is, that the amended bill was filed after his deposition was taken, and that they preferred to go to trial rather than delay the case in order to retake it, and thus leave to be supplied by inference and argument those defects in the evidence which could have been remedied and those omissions which could have been supplied by actual testimony on that subject. In this condition of the record as to the credit which defendants claim for the failure of title, and which was not asserted by cross bill, we do not think the decree of the Chancellor and of the Court of Appeals in refusing to adjudge this question or make any order upon it, is sustainable, nor do we think that the argument in this connection is such a supplement to their finding of facts as to require the holding that this $1,000 had been in fact appropriated, as was required by law to be appropri-

ated upon a proper construction of their contract on the $25,000 agreed to be paid. The difficulty in the case arises as to what is the proper solution of these questions on an appeal from that Court to this. The questions of fact and law are so mixed and complicated, and the condition of the record so peculiar, that, were it an appeal from the Chancery Court direct, for an adjudication of the questions by us, without the intervention of the Court of Chancery Appeals, it would be hardly possible, with any certainty, to do justice between the parties. We are of the opinion that it presented a case for the application of § 3889 of the Code, providing that "the Supreme Court shall also, in all cases where, in its opinion, complete justice cannot be had, by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the Court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right." We think this is a proper case for the application of that rule, and that, as to the points indicated, this case should be reversed and remanded for proper pleadings to put in issue the question as to the loss probably sustained by the failure of title to lot No. 91, and for further evidence on the question of the $1,000 payment, and, being remanded for this purpose, the question as to the time of the payment as to lot No. 93 should also be open for further proof and adjudication.

We think the equities of this case require that no adjudication on these questions against the complainants, Cummings, and the administrator of Bond should be made without more satisfactory proof of their liability. It appears that Bond paid $1,000 for an option for which no credit was claimed or allowed, and, upon the condition of the record already stated, it is very probable that nothing was allowed upon his second payment of the same amount for another or renewal option. The Chancellor's decree adjudged that there was some proof in the record tending to show failure of title to lot No. 91, but as no eviction was shown under a superior title, and no issue on the subject was made in the pleadings, no adjudication was made on this point. It thus appears that in this speculative transaction, in which the $2,000 was paid for the options and $25,000 for the property, almost the entire amount agreed to be paid by the defendant was paid without considering either option payment. Unless they were culpably negligent, we think they ought to have the opportunity to show whether they had lost anything by the failure of title, and in this extremely doubtful condition of the record they are entitled to an account, and an adjustment of the question upon specific and definite testimony as to whether the $1,000 had been credited properly, as the legal construction of their contract requires.

We therefore reverse the decree of the Court of Chancery Appeals and the decree of the Chan-

13 P—47

cellor in these particulars, and remand it, that proper issue may be tendered . by amended bill as to the loss resulting from the failure of title to lot No. 91, and that an account may be had determining what credits defendants may be entitled to on this account, and as to the date of the credit respecting lot No. 93, and as to the $1,000 paid on the last option.

The costs of this Court will .be divided equally between the appellants and appellee, Montague.