E. C. MORROW *v.* JOSEPH W. SNEED.

(*Knoxville.*    September Term, 1908.)

1. **CHANCERY PRACTICE.** Master is disqualified to grant and enter a pro confesso upon the cross bill of the defendant who is the chancellor.

The clerk and master is empowered not only to grant and enter an order *pro confesso*, but also to set such order aside, and in so doing he exercises a judicial function; and when acting in such matter in the room and stead of the chancellor in a case in which the latter is disqualified by reason of being the defendant, the master and his deputy were equally disqualified to grant and enter an order *pro confesso* on the defendant's cross bill. (*Post, pp.* 174-178.)

Cases cited and approved: Friedman v. Mathes, 8 Heisk., 502; Kimberly v. Arms, 129 U. S., 512; In re Durant, 60 Vt., 176.

2. **SAME.** Refusal of postponement or continuance for absence of a deposition caused by accommodation to the opposite party is reversible error, when.

Where a case was at issue on the 5th of January, 1907, but nothing was done by either party to speed the cause until the 13th of August, 1907, when, by consent, it was continued and remanded to the rules for the taking of proof; and notice was given by complainant to take depositions on the 28th of August, 1907, but at the request of defendant, whose judicial duties made it difficult for him to attend, complainant twice consented to a postponement until the 12th of November, 1907, when complainant's deposition was taken in part, and was left open to enable him to refer to some records, with a view of making certain what was uncertain, and it remained unfinished until the 9th of December, 1907, when complainant's solicitors were notified that the case would be called for trial

Morrow v. Sneed.

two days thereafter, and they at once wired to have the deposition closed and forwarded, but it failed to arrive in time. When the case was called, complainant asked for a postponement for a few days for the arrival of the deposition, or for a continuance, which request the court improperly refused to grant, and thereby committed reversible error. (*Post, pp.* 178-181.)

3.  **SAME.** Reversible error to deny complainant's motion to dismiss suit without prejudice after refusal of continuance, when.

   Where complainant's request for a postponement of the trial for a few days to give time for his depositions to arrive, or for a continuance, was improperly refused, it was reversible error for the court to deny his motion to dismiss the case without prejudice and to force him to trial. (*Post, p.* 181.)

4.  **SAME.** Reversible error for abuse of discretion in improperly refusing a continuance, when.

   While continuances are subject to the discretion of the trial court, and this discretion will not be interfered with, save when abused, still when abused, it is reversible error. (*Post, p.* 181.)

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— D. D. ANDERSON, Special Chancellor by interchange.

PICKLE, TURNER & KENNERLY, for complainant.

R. E. L. MOUNTCASTLE, for defendant.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This is a suit prosecuted in the chancery court of Knox county, over which the defendant, the Hon. Jo-

seph W. Sneed, presides.  During the progress of the
cause a cross bill was filed by the defendant.  Process
was duly issued and served upon the cross-defendant,
and, failing to answer, an order *pro confesso* was en-
tered by the clerk and master upon one of the rule days
of the court.  Subsequently affidavits were made in
support of a motion to set aside this order, and with
these affidavits an answer was presented.  This motion
was heard by Hon. J. W. Green, sitting by consent of
the parties as special chancellor, and was sustained by
him, upon the ground that the official relationship be-
tween the clerk and master and the cross-complainant
disqualified the former from entering the order *pro
confesso*.  The correctness of this ruling is called in
question by the cross-complainant, and in support of
his view a number of cases have been called to our
attention, all of which, save one, are from the supreme
court of California, in which it is held that a clerk of
a court was not disqualified to enter a judgment by de-
fault on account of the fact that the judge of his court
was interested in the matter of litigation.  These cases
have been examined, and we find that they are predi-
cated upon a statute, the terms of which do not appear
in any of the opinions of that court.  It is apparent,
however, that in them the officer entering the judgment
by default was a mere clerk, and this duty discharged
by him, whatever the terms of the statute, was purely
ministerial.  The only case outside of California to
which reference is made by the counsel of cross-com-

plainant is from New York, reported in 9 Abbott's Practice Reports, to which we have not had access. As against these holdings may be set off the very able opinion of the supreme court of Vermont in *Re Durant*, 60 Vt., 176, 12 Atl., 650, wherein it was held that the power of the clerk of the county court, exercised by him under the authority of the statute in the issuance of a warrant in a criminal case, was *quasi* judicial.

However this may be, the office of clerk and master of the chancery court is dual in character. It may be conceded that as a mere clerk the duties discharged by him are ministerial in character, but as master in chancery he is the right arm of the chancellor, and acts performed by him in this capacity are those of a judicial officer. In 26 Cyc., 1587, it is said that "a master in chancery is altogether distinguished from a clerk whose duties are largely ministerial, in that he is an assistant to the judge or chancellor." This distinction between the two offices is equally recognized in *Kimberly* v. *Arms*, 129 U. S., 512, 9 Sup. Ct., 355, 32 L. Ed., 764, where it is held that "a master in chancery is an officer appointed by the court to assist it in various proceedings incidental to the progress of the cause before it."

But nowhere is this distinction more clearly stated than by Chancellor Gibson in his valuable work on Suits in Chancery, in section 1153, where he says: "There is a wide difference between a clerk of court and a master in chancery. The duties of a clerk are almost exclu-

sively clerical, and his powers are strictly defined by law or the orders of the court. He exercises no judicial function, and has but little discretion. The master, on the contrary, is a judicial officer, and is clothed of many of the powers of the chancellor himself; and an examination of the chancery reports and of the works on chancery practice will show that the prompt and proper administration of justice requires that large powers and no little discretion be vested in the master. The matters referred to the master for his action are almost as numerous as the matters subject to the jurisdiction of the court. Among the duties he may be called upon to discharge are the following. . . . To take and set aside orders *pro confesso*. . . . ."

Thus it will be seen his power is not only to enter an order *pro confesso*, but also to set that order aside. It could, we imagine, hardly be maintained that in the matter of setting the order aside he was discharging a purely clerical or ministerial duty. If that was so, and he was bound as a matter of law to discharge it, without the exercise of any discretion on his part, then he might be forced to this discharge by a writ of *mandamus*. It would be hard to find any authority holding that *mandamus* would lie in such case. If not purely ministerial in the case just stated, then we are unable to perceive why it would be purely ministerial in the first instance. He has the same authority, neither more nor less than the chancellor, upon given premises to enter the order *pro confesso*. That the

121 Tenn.—12

entry of such an order by the chancellor would be the exercise of a judicial function does not admit of question. How, then, can it be doubted, when, sitting in the place of the chancellor and acting upon the same premises, the master makes entry of such an order, that he is doing otherwise than exercising a judicial function. "If an officer do an act depending on the exercise of the slightest judgment or discretion on his part, then the act is judicial, . . . whatever may be the general function of the office." *Friedman* v. *Mathes*, 8 Heisk., 502.

We are satisfied that, acting in this matter in the room and stead of the chancellor, in a case in which the latter would have been disqualified, the master, together with his deputy, was equally disqualified, and that the special chancellor, therefore, was correct in his holding that his action in this regard was a nullity.

In the final disposition of the cause, however, by Judge D. D. Anderson, sitting in the chancery court by interchange with Judge Sneed, we think there was error. On January 5, 1907, the complainant answered defendant's cross bill, denying its various allegations. Nothing was done by either party to speed the cause until the 13th of August, 1907, when, by consent, it was continued and remanded to the rules for the taking of proof. Previous to this latter date, however, complainant gave notice that he would take the depositions of several persons, himself included, in the city of Clarksville, where he resided, on the 28th of August, 1907.

Morrow v. Sneed.

At the request of the defendant and for his convenience, the complainant consented to postpone the taking of these depositions until October 28, 1907. Again on this latter date, at the request of defendant, a further postponement was made until November 5th, and thereafter it was mutually agreed that the depositions in question should be taken November 12th in that city. On that day, the defendant being in attendance for the purpose of cross-examination, the deposition of the complainant, Morrow, was given, but not finally concluded. The record indicates it was left open in order that the witness might refer to some records, with a view of making certain that which was possibly somewhat uncertain. This deposition remained in an unfinished condition until December 9th.

While there was much delay on the part of complainant, from the date of the filing of the original bill, in the preparation of this cause for trial, yet we think it clear, at least from August, 1907, to November 12th, the suspension of such preparation was the result of a concession made by the solicitors of complainant in the city of Knoxville, entirely for the convenience of defendant, who desired to be present in person at the taking of the depositions, but whose duties as a judicial officer made it difficult for him to be in Clarksville at an earlier date. When the deposition of Morrow was left open on that day, we think it clear the subsequent delay in closing and forwarding it was the result of pressing professional engagements of the solicitors of

both the complainant and the defendant residing in the city of Clarksville. So it was, when the defendants announced in open court, on December 9th, that Judge Anderson would take up the docket of cases in which he (Judge Sneed) was disqualified, and the Knoxville solicitors of complainant were notified that this case would be called at 1:30 p. m. on the 11th of December, they at once wired their associate counsel, in Clarksville, to have closed and forward Morrow's deposition. Notwithstanding this telegram was speedily acted on, the deposition did not get to the office of the clerk and master of the chancery court by the hour of the day designated. Anticipating the early arrival of same, at the call of the case by Judge Anderson at the time designated, they asked for a postponement for a few days or a continuance. This being declined, they then asked to dismiss their case without prejudice, and this was also declined, with the result that both original and cross bill were dismissed as upon a trial, upon the ground that the allegations contained in these several pleadings were not sustained by evidence.

To repeat what has already been said, we think it apparent that, while the parties to this cause had been dealing at arms' length until notice was given in August to the defendant of the taking of depositions in Clarksville by complainant, from that time until the 12th of November the preparation of the case for trial was a matter of concession on the part of complainant to the convenience of the defendant. This being so, it

Morrow v. Sneed.

can readily be perceived that the former might be disarmed of the feeling that he would be precipitately pressed into a trial. In this state of the case, and under these conditions, we do not think the request of the complainant for a few days' delay, giving time for the arrival of his deposition, was unreasonable. To the contrary, we are satisfied that it was reasonable, and that forcing him to trial under the circumstances worked a hardship, and was not warranted by any equitable consideration or legal necessity. This condition was aggravated by the refusal of the trial judge to grant the motion of complainant to dismiss when he found himself in this position of disadvantage.

While continuances are subject to the discretion of the trial court, and this discretion will not be interfered with, save when abused, yet we are satisfied the present is a case where it is the duty of this as a revising court to interpose. The final decree of the trial judge, therefore, will be reversed, and the cause will be remanded for further proceedings.