KENNETH R. CARVER and PAUL A. HELLEMN v. J. C. CROCKER and wife, ZELLA CROCKER.—311 S. W. (2d) 316.

Middle Section. December 20, 1957.

Petition for Certiorari denied by Supreme Court March 4, 1958.

Robert L. Keele, Manchester, for complainants.

T. Arthur Jenkins, Manchester, for defendants.

## I

SHRIVER, J.   There is involved here a question as to the failure of the trial judge to grant a continuance on account of the illness of defendants' attorney of record.

There is also involved the failure of the Court to find the facts in an opinion or in a decree, such finding being very important on appeal in a case of this character, although there was no special request of counsel for such written finding.   We also deal with the question of the right and duty of the appellate Courts to remand for further proceedings where the record before us is in such unsatisfactory condition as to hamper a correct decision on the merits.

This is an ejectment suit brought by complainants Kenneth R. Carver and Paul A. Hellemn to eject the

defendants J. C. Crocker and wife from certain land in Coffee County to which the complainants claim title. Said disputed land consists of about 31.38 acres lying along the west boundary of complainants' 1,170 acre tract and comprises the eastern part of a tract of 82.23 acres claimed by and in possession of defendants.

A demurrer to the original bill was filed but was withdrawn and an answer filed denying the material allegations of the bill.

Subsequently an amended and supplemental answer was filed by defendants in which they denied the allegations of complainants' bill with respect to title, and asserted that title to said land was acquired by them by deed dated Oct. 9, 1946, from George H. Trail and wife. A certified copy of said deed is made an exhibit to the answer and shows that it is of record in Book #64, page 339, Register's Office for Coffee County, Tennessee.

Said answer asserts that defendants by themselves and those through whom they claim had been in peaceable, notorious, continuance adverse possession of the land in question for more than twenty years before the filing of the bill herein and that they had been in continuous, actual, notorious, exclusive adverse possession and control of the land in dispute, under registered deed showing title in them, for more than seven years next before the filing of the bill.

The record shows several continuances by agreement or consent until November 1954 at which time complainants applied for and were granted a continuance. During the month of December 1954 complainants took the depositions of two witnesses, waiving all formalities and

reserving the right of cross examination by counsel for defendants.

A final decree was entered in the cause on August 3, 1956, reciting that the cause came on to be heard before Honorable H. J. Garrett, Chancellor, on the bill, the answer of the defendants, the proof in the cause and the whole record, upon consideration of which it was ordered, adjudged and decreed by the court that the complainants are the owners in fee of all the land described in the bill in this cause, including that portion claimed by the defendants, and a writ of possession and a reference to the Master concerning the value of timber alleged to have been cut, were ordered.

On September 1, 1956, a "Petition for Re-hearing" was filed setting forth that the defendants were very much aggrieved by the decree rendered on August 3, 1956, adjudging complainants to be the owners of the land described in the bill and claimed by defendants.

■ While an appeal does not lie from a Chancellor's order overruling a petition to re-hear, see Capshaw v. Town of Cookeville, 185 Tenn. 96, 203 S. W. (2d) 369, we think some of the allegations of the petition in this case are significant.

■ As was said in Morrow v. Sneed, 121 Tenn. 173, 114 S. W. 201, while continuances are generally subject to the discretion of the trial Judge, when this discretion is abused, it is reversible error. To the same effect is Douglass v. Blakemore, 59 Tenn. 564. Also see Reagan v. McBroom, 164 Tenn. 476, 51 S. W. (2d) 995 and Fidelity-Phenix Fire Ins. Co. v. Oliver, 25 Tenn. App. 114, 152 S. W. (2d) 254.

Sections 2, 3 and 4 of the Petition to Rehear are as follows:

"2. Petitioners are greatly surprised by the final decree being rendered in said cause, since they were informed by the Honorable H. J. Garrett, Chancellor, before the opening of the regular May 1956 Term of the Chancery Court for Coffee County, Tennessee, that all of the Honorable Leighton Ewell's cases on the docket would have to go over until the next regular term of Court due to his illness.

"3. Petitioners are greatly surprised by the final decree being rendered in this case, because they had no notice of the order of this Honorable Court filed May 23, 1956, requiring them to take their proof within 45 days from May 21, 1956, and were and are completely surprised by the Court's action thereon.

"4. Petitioners are greatly surprised by the entry of a final decree upon this cause without notice to them and did not learn of the hearing of August 3, 1956, until a few days thereafter when his father was informed of the Court's action by the Honorable Chancellor."

It is further recited in said petition that on January 27, 1956, one of their witnesses fell and broke his arm and was unable to testify on January 28, 1956, the date set by agreement of counsel for the taking of his deposition. It is also alleged that the petitioners were greatly surprised by the Court's action because their solicitor of record, Hon. Leighton Ewell, underwent an emergency operation on January 28, 1956, the date set for the taking of the depositions of the witnesses for the defendants,

and from that date forward was not sufficiently recovered from his illness to enable him to proceed with the cause.

They further assert that owing to the illness of their solicitor they had no opportunity to prove, as they were abundantly able to do, that the 31.38 acres of land claimed by complainant was wholly outside of all the boundaries of complainants' land and, if given the opportunity, would show that said land had been held by the defendants more than 20 years by adverse possession and claim of right, and more than seven years under a registered deed, all of which they were prevented from showing by the illness of their attorney and their understanding from the Chancellor himself that their case would be continued.

The sworn petition for a re-hearing prayed that the final decree hereinabove referred to be reversed and set aside and that a rehearing be granted them.

No answer to the Petition to Re-hear was filed but complainants' motion to dismiss it was granted and the Chancellor filed a short memorandum which was implemented by decree of Nov. 9, 1956, dismissing the petition to re-hear. There was no finding of facts or response by the Chancellor to the charges in the petition that he had announced to the defendants on the first day of the term that Mr. Ewell's cases, including this case, would be continued until the next term of court.

Thereafter, on November 27, 1956, Mr. T. Arthur Jenkins, an attorney of the Coffee County Bar, filed a motion on behalf of the defendants, J. C. Crocker and wife, which motion is as follows:

"Come the defendants, J. C. Crocker and wife, Zella Crocker, and move this honorable Court to set

aside all orders and decrees of this Honorable Court made during the May, 1956 Term of Court and subsequent thereto for the following reasons and each of them:

"1. The solicitor of record, Leighton Ewell, was ill during the May 1956, Term of Court and unable to see after this matter for them.

"2. In all other cases in which Leighton Ewell was Solicitor of record were passed at the May 1956 Term of Court to the next regular term of this Honorable Court.

"3. That defendants have not had any notice of this Honorable Court's action prior to the decree entered of record on August 3, 1956, in favor of the complainants.

"4. That they firmly believed that this case would go over as did all other cases Leighton Ewell was solicitor of record in, after being informed by Chancellor Garrett, prior to the opening of Court that all of Mr. Ewell's cases would by necessity due to his illness, have to be continued to the next regular term of Court.

"5. That defendants' only notice, of any actions of this Honorable Court has been gained from common gossip and from others not parties to this lawsuit.

"Wherefore, and from all of which, the defendants respectfully move this Honorable Court to set aside each and every order made during the May 1956 Term of Court and all orders subsequent thereto and allow them to cross-examine the witnesses for complainants, since said cross-examination has been ex-

pressly preserved, and to allow defendants also, in addition to cross-examining witnesses for complainant, to be given a reasonable time within which to take their proof in defense.

"Defendants file hereto affidavits in support of their motion.

"T. Arthur Jenkins,
"Solicitor for Defendants."

The foregoing motion is supported by the affidavit of J. C. Crocker, one of the defendants, who swears that he went to the office of Chancellor H. J. Garrett on the morning of May 21, 1956, on the first day of the May Term of the Chancery Court, with his father O. K. Crocker, to inform the Court of his lawyer's illness. He states that Chancellor Garrett told him that he knew that Mr. Ewell was sick and that all his cases would have to be continued until the next term of court.

He further states that the next information that he had about the case was about three days after the decree was entered on August 3, 1956, divesting him and his wife of their property.

He states that he went to Mr. Ewell's house after learning of this and found that he was still not able to attend to business but suggested that defendant see Mr. T. Arthur Jenkins, which he did. Thereafter Mr. Jenkins filed a petition to re-hear and this motion.

To the same effect is the affidavit of O. K. Crocker, father of J. C. Crocker.

There is also in the record an affidavit of the Circuit Court Clerk of Coffee County to the effect that the case

of Carver v. Crocker in that Court was still on the docket. There is also the affidavit of R. W. Casey, Clerk and Master, setting forth the proceedings in the case at bar and stating that all other cases of Mr. Ewell were continued at the May Term 1956 except the case at bar.

█ This Court was disposed to treat the petition to re-hear and the motion and affidavits attached thereto as in the nature of a petition for Writ of Error Coram Nobis, since said petition has all the characteristics of such a petition. However, we find that under the authority of Elliott v. McNairy & Co., 60 Tenn. 342, a Writ of Error Coram Nobis, being in the nature of a new suit to reverse a former judgment, security for costs or the oath in lieu thereof, is necessary in order to begin such an action.

The memorandum filed by the Chancellor in overruling the petition to re-hear provides, ''Defendant is granted thirty days within which to file bond or otherwise perfect his appeal. This 30th day of October, 1956.''

The order dismissing petition to re-hear dated Nov. 9, 1956, allowed thirty days from October 30, 1956, within which to perfect an appeal as provided by law. On November 29, 1956, an order overruling the motion to set aside the final decree and grant a new hearing was entered wherein it was recited, ''Whereupon, defendants moved the Honorable Court to be allowed 30 days from the date of the order overruling the petition to rehear was entered within which to file their appeal bond, whereupon, the Court overruled their motion and defendants excepted to the action of the Court, and their exceptions are hereby preserved.''

The appeal bond filed by defendants Crocker and wife, recites that the obligation is to be void on condition that defendants Crocker and wife successfully prosecute an appeal to the next term of the Court of Appeals of Tennessee, sitting at Nashville, "By prayer from a judgment rendered against J. C. Crocker and wife, Zella Crocker, in favor of Kenneth R. Carver and Paul A. Hellemn by Chancery Court of Coffee County, Tennessee, on the 30th day of October, 1956," etc.

After the appeal was perfected to this Court the complainants (appellees) filed their motion to dismiss the appeal on the ground that the final decree in the cause was pronounced on August 3, 1956, and that the appeal upon which the record is now before the Court was taken from the action of the Chancellor in overruling or denying the petition to re-hear.

On presentation of the cause before this Court counsel for the appellants was granted leave to file the record herein for review on a Writ of Error and the cause is before us now pursuant to such an order.

## II

The first witness introduced by the complainant was Mr. Willaim M. McBride a Rural Mail Carrier who formerly had been County Surveyor of Coffee County. While he was County Surveyor he had rechecked a survey in the 15th Civil District of Coffee County. This was about 1937. At that time he made a plat showing the result of the survey, which plat he filed as Exhibit 1 to his testimony. He was handed a map or plat of what was described as the "Lowell Colony land" and asked if the map he had used in his survey corresponded with the

Lowell Colony map in so far as the Strubble land is concerned, to which he answered "Yes, sir. I might say practically so. I see a little, maybe two or three little differences in measurements, but not very much".

He was asked when he ran the lines on his map if he was rechecking an older map and he said "Yes, sir". He was then asked if it checked with the old map and he answered, "Pretty good, as well as I remember, very good". He was then asked if the corners were clear and definite and well established to which he answered, "Most of them were. There were two corners I could not tell much about." He was asked if, in addition to his crew, there were any of the adjoining land owners present during the survey, and he answered "Just one that I know of, part of the time".

He was then asked if the owner that was there made some objections about his survey and he said, "He didn't make any objections, but he wanted to show us some of these lines, which proved to be false according to that map".

This is the sum and substance of his testimony, and cross examination was reserved.

The second witness called for complainants, and the only other witness to testify in the cause, was Mr. Claude Ingram, a farmer and surveyor residing in Manchester, Tennessee. He described himself further as formerly County Surveyor and engaged in surveying for the past several years.

He expressed familiarity with the land owned by the complainants, which he surveyed in January 1953. He stated that the papers that he had before him in making

the survey were complainants' deed and a plat made by William McBride in October 1937, and an abstract of title which he filed as exhibit No. 1, to his deposition. He stated that when they were surveying, the only representative of the adjoining owners who was present was the father of defendant, J. C. Crocker, who was there part of the time and tried to show them the true location of the property lines which did not correspond with those found by the witness.

It was stipulated that uncertified copies of records could be introduced as evidence but that, in the event of appeal, certified copies would be placed in the record on appeal. Numerous exhibits consisting of maps, deeds, copies of wills and copies of various other instruments were filed as exhibits to this witness' deposition. Few, if any of them, are certified or authenticated except by the Clerk and Master as exhibits, hence they are in the record contrary to the agreement or stipulation which provided for certification in the event of appeal.

Counsel for complainants, without qualifying this witness except that he was a farmer and surveyor with several years experience in surveying, placed into the record as exhibits to his testimony, a so-called abstract, maps, deeds and various and sundry instruments comprising a mass of documents, without further explanation than simply to identify them as such instruments.

A typical example follows:

"Q. Will you file the will of Charles E. Strubble of record in Deed Book 71, page 139, Register's Office of Coffee County, Tennessee, as exhibit No. 4, to your testimony. A. Yes sir.

"Q. Also deed from E. E. Green and wife to C. E. Strubble of record in Deed Book No. 34, page 502, Register's Office of Coffee County, Tennessee, as Exhibit No. 5, to your testimony? A. I will."

This witness was asked:

"Q. Does the complainant's land come out of this Lowell Colony land? A. Yes sir. It is part of the Lowell Colony land.

"Q. What about the defendant's land. Does it come out of it too? A. No sir. It lies west of the Lowell Colony land.

"Q. Is the Lowell Colony land plat of record that you have ever been able to find? A. No sir."

Again cross examination was reserved.

### III

On this record and under the circumstances reflected hereinabove, the Chancellor, on August 3, 1956 entered a final decree without finding any facts other than simply the ultimate conclusion that the complainants are the owners in fee of the land described in the bill.

While, as above stated, an appeal does not lie from a petition to re-hear, it appears from this record as a whole, which is before us on writ of error, that counsel for defendants was ill at the time the cause was heard and final decree entered and was not able to be present, all of which was known to the Court, and defendants were not represented at the hearing.

There is no denial of these facts anywhere in the record and the Chancellor did not express any contrary findings in his memorandum and decrees.

Mr. Arthur Jenkins on behalf of defendants filed assignments of error in which he challenged the action of the Court in decreeing title to disputed land to the complainants.

In his brief in support of the assignments, counsel for defendants states that complainants' proof shows that there was a disagreement regarding the location of the boundary lines in the purported survey by William McBride in October 1937, which survey was relied on by the other and more recent surveyor, Claude Ingram. He argues that complainants have not shown any rights to this land or that any one, other than the Crockers and their predecessors in title, were ever in possession of the land in question. It is further stated that, after compainants failed to show title in themselves, they attempted to show purported vices in the defendants' title.

Counsel for the complainants, after briefly discussing the assignments having to do with the petition to re-hear, states his case by saying that various title papers are set out in the depositions of William McBride and Claude Ingram. He then explains the omission of certain exhibits which are not in the record stating that it was his opinion that they were not necessary to the establishment of title in complainants. He concludes by saying:

"In the discussion of this assignment in adversary brief, it is not pointed out wherein complainants failed to show the title in them by a chain back to the grant."

Learned counsel did not, in any way, attempt to assist the Court in the examination of the papers which he claims show title in the complainants as being deraigned from a grant. As hereinbefore stated, there was no finding of facts by the Court, hence this record is, in

effect, dumped in the lap of this Court with the apparent expectation that we will, without help from counsel or the trial Court, do the job of examining all of these papers, identified and unidentified, certified and uncertified, and try, as best we can, to deraign the title and do equity and reach a just decision as to the claims of these parties.

## IV

■ In Hicks v. Hicks, 168 Tenn. 539, 79 S. W. (2d) 802, it was said that, in the absence of finding of facts by the Chancellor, where the decision depends on a determination of facts, correct practice would permit the Court of Appeals to remand the case to the chancery court for proper findings.

We think the case also should be remanded for other and more compelling reasons.

Section 27-329, T. C. A. is as follows:

"Remand for Correction of Record.—"The court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right."

Gibson's Suits in Chancery 4th Ed. (Higgins and Crownover) Sec. 1318 states:

"When Causes Will Be Remanded—It may be laid down as a general rule that the appellate Court will remand a Chancery cause (1) whenever complete justice cannot be done the appellant on the

merits by reason of some error of the Chancellor in an interlocutory order, or in his rulings in excluding evidence, whereby the appellant was not enabled to properly present his case; or (2) whenever, for any other reason, not resulting from the misconduct, or culpable negligence of the party complaining, he has not had a fair opportunity to amend his pleadings, or prepare his proofs.

\* \* \* \* \* \*

"2. Where the bill was improperly dismissed in consequence of some rule, or interlocutory order.

\* \* \* \* \* \*

"5. Where, by an improper ruling of the Chancellor, the party complaining was prevented from taking or using material evidence, or was erroneously denied a continuance.

\* \* \* \* \* \*

"8. Where the record shows that there is more satisfactory evidence obtainable which will enable the Court to come to a more satisfactory conclusion.

"9. Where complete justice cannot be done by reason of some defect in the pleadings, or want of proper parties, or oversight, without culpable negligence.

\* \* \* \* \* \*

"11. Where in any way the party complaining has been erroneously prevented from so presenting his case as to enable the appellate Court to do him full justice on the merits."

In the early case of Cowan v. Dodd, 43 Tenn. 278, our Supreme Court stated, that where evidence before it was

not satisfactory and that any final decree pronounced on the record as it stood might work an injustice, it would remand the cause, concluding:

"We will, therefore, reverse the decree of the Chancellor, and remand the cause to the Chancery Court, at Greeneville, to the end that the parties may have an opportunity of adducing any additional proof that they may be able to, upon the issues arising upon the amended bill."

Again in Grider v. Harbison, 46 Tenn. 208, 209, where the sale of a tract of land in Blount County, was involved and the determination of the case depended upon certain facts which the record did not satisfactorily establish, the Court said:

"We are not satisfied, upon the present state of this record, to let this decree stand.

"There is in existence, we may safely assume, more satisfactory evidence upon this question, which we regard as important if not vital to the case; and this evidence, if produced, will enable the Court to come to a more satisfactory conclusion.

"And the question now arises, as to the power of this Court to remand the cause for additional testimony. The parties and their counsel, have made up the record, and it may be said they have the right to demand decision upon the record as they choose to present it. Without entering into the discussion of this question, it will be sufficient to say, that the practice, though it might have been originally doubtful, is sanctioned by authority; See the case of Cowan v. Dodd & Mitchell, 3 Cold. 278, 279."

The decree was reversed and the cause remanded to the Chancery Court at Maryville for additional testimony on the question indicated in the opinion.

In Wood v. Neely, 66 Tenn. 586, the Supreme Court said that, where a party has a clear right, so that injustice will be done by dismissing his bill, but his suit fails from a neglect not culpable, it is the duty of the court to remand in such cases that justice can be done.

In Settle v. Marlow, 80 Tenn. 472, 473, the Court stated that, while the general practice in the Supreme Court on a reversal or finding of error in the judgment of the Circuit Judge, where he has tried a case without a jury, is to render such judgment as ought to have been rendered, yet when the Courts see that justice and right require that the case be remanded, it is always done. Citing Wood v. Neely, supra, and Hurley v. Buchi, 78 Tenn. 346.

In Bond v. Montague, 97 Tenn. 727, 728, 37 S. W. 699, the decree of the Chancellor was reversed and the cause remanded for an amendment of the pleadings and further proof, because, as the Court stated, the questions of fact and law were so mixed and complicated, and the condition of the record so peculiar, that it would hardly have been possible, with any certainty, to do justice between the parties.

In Caesar v. Harris, 108 Tenn. 653, 69 S. W. 731, where the Chancellor had delivered an adverse opinion but before the decree had been entered the complainant's attorney presented an affidavit showing that, ''by misadventure and oversight'', he had failed to file a deed that was essential to sustain his client's case and offered to

file the deed, which was refused by the Court, complainant appealed and it was held that he was entitled to have the cause remanded for the introduction of his evidence.

In Whaley v. King, 141 Tenn. 1, 206 S. W. 31, in an opinion by Mr. Justice Green, there was a remand to allow additional proof because condition of the record was unsatisfactory.

Finally in the well known and leading case of Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 266 S. W. 313, in a lucid and very carefully reasoned opinion by Special Justice Tom Malone, it was stated that, ordinarily, the Court would proceed to make such a decree on the record as should have been made under the pleadings and relevant proof, but, in a proper case, and in furtherance of justice, the Court would remand the cause for further proceedings before the Chancellor,—Citing the above Code Section and several of the cases hereinabove referred to.

On the record before us, it seems that the defendants have such claim of right as that opportunity to cross examine complainants' witnesses should be afforded and defendants' proof should be heard by the Chancellor unless foreclosed by their culpable negligence and this does not appear.

Not being satisfied to have the rights of these parties settled on this record, the cause is remanded to the Chancery Court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Hickerson, J., concurs.

Felts, J., not participating.