STATE OF TENNESSEE ex rel. STATE BOARD OF ACCOUNTANCY v. BOOKKEEPERS BUSINESS SERVICE COMPANY.—382 S. W. (2d) 559.

Eastern Section. February 21, 1964.

Certiorari Denied by Supreme Court September 4, 1964.

George F. McCanless, Attorney General, Walker T. Tipton, Assistant Attorney General, Nashville, for appellant.

Boult, Hunt, Cummings & Conners, James I. Vance

Berry, Nashville, Goins, Gammon, Baker & Robinson, Chattanooga, for appellee.

COOPER, J. This action was brought by the State of Tennessee, on relation of the State Board of Accountancy, seeking a declaration that the defendant Bookkeepers Business Service Company, a corporation, was engaged in the practice of public accountancy, and seeking an injunction restraining such practice. In the original bill, after pointing out that the practice of public accounting by a corporation is expressly prohibited by T.C.A. sec. 62-141, complainant averred that the defendant openly solicits business from the general public and holds itself out as one skilled in the knowledge, science and practice of accounting, and as one qualified and ready to render professional accounting services for compensation. Complainant further averred that the defendant has secured numerous clients for whom it performs the work of an accountant in devising and installing an accounting system, in preparing profit and loss statements and statements of net worth, and in compiling tax returns—all being services enumerated by the legislature in defining the practice of public accountancy. T.C.A. sec. 62-127.

In its answer, the defendant denies the charges of the complainant, and avers that it offers to the public and performs bookkeeping services only, and that these services are not within the purview of the statutes defining and regulating the practice of public accountancy. The defendant further avers that if the statutes in question should be construed so as to prohibit defendant's activities, such construction would render the statutes unconstitutional in that it would unlawfully restrict the right of private contract between individuals in violation of

Article 1, Section 8 and Article 11, Section 8 of the Constitution of the State of Tennessee.

The Chancellor, after hearing the case on oral testimony, found that the conduct of defendant's business did not constitute the practice of public accountancy as defined by T.C.A. sec. 62-127; that the defendant's business activity was within the exception contained in T.C.A. sec. 62-126 covering the practice of bookkeeping; and that to construe the Public Accountancy Act so as to cover the business activities of the defendant would render the Act unconstitutional in that such regulation would not be in keeping with the preservation of public health, safety or welfare under the police power. The Chancellor further commented in his memorandum opinion that he was concerned with the defendant's representations that it maintained a staff of tax experts and that, while he was of the opinion that it did not amount to "a holding out to the public that defendant is doing public accounting", it could mislead the public into believing that the tax experts were either accountants or attorneys, and should therefore be deleted from defendant's publicity brochure and from its solicitation of business.

The Chancellor then entered a decree dismissing the State's bill to the extent that it sought to enjoin the defendant from engaging in the practice of public accountancy, but enjoined the defendant from advertising that it maintains a staff of tax experts.

The State filed a pleading which was denominated a "Motion for New Trial", but which was treated as a "Petition to Re-Hear". When this pleading was overruled, the State appealed.

The defendant moved to strike the State's assignments of error and to dismiss its appeal on the ground that the State did not appeal from the final decree of the Chancellor, but appealed only from the Chancellor's action in overruling the "Petition to Re-Hear", which is not reviewable. Capshaw v. Town of Cookeville, 185 Tenn. 96, 203 S.W.(2d) 369.

■ Upon oral argument, the State asked for leave to file the record for review on a writ of error. It is clearly entitled to this remedy. Ragsdale v. Hill, 37 Tenn.App. 671, 269 S.W.(2d) 911; Carver et al. v. Crocker et ux., 43 Tenn.App. 636, 311 S.W.(2d) 316.

Accordingly, we overrule defendant's motion to dismiss, and treat the cause as properly before us on writ of error. Covington v. Neilson, 14 Tenn. 475, 477; State for Use and Benefit of Lawrence County v. Hobbs, 194 Tenn. 323, 329, 250 S.W.(2d) 549, 551; Chumbley v. Duck River Elec. Membership Corp., 203 Tenn. 243, 310 S.W. (2d) 453.

Turning now to a consideration of the merits of the case, we find that the facts are not in dispute. The defendant Bookkeepers Business Service Company offers a copyrighted bookkeeping system and/or a service, which it describes as a bookkeeping and tax service, to the small businessman who operates his business on a cash basis, and has a gross volume of business of less than $10,000.00 per month.

In its business solicitation, the defendant uses a brochure which gives facts about the Bookkeepers Business Service Company, and which also states the full extent of the services offered by defendant to purchasers of the

bookkeeping and tax service. The material portions of the brochure are as follows:

"WHO: Since 1945 Bookkeepers Business Service Company has specialized in bookkeeping for smaller and medium sized businesses * * * we are full time bookkeepers and tax specialists.

"WHAT: A bookkeeping service for restaurants, service stations, liquor stores * * * and all other single ownership and partnership business.

"WHY: To give the smaller merchant the same advantages that "Big Business" receives through employing full-time, highly trained tax experts and bookkeepers.

"WHEN: We can take over your bookkeeping at any time * * * your old records are combined into complete NEW books.

"WHERE: Bookkeepers Business Service Company is a national company * * * the largest and most progressive Bookkeeping Company of its kind in the world.

\* \* \* \* \* \*

"YOU MAY CHOOSE—personalized service semi-monthly or monthly, with books and records kept on your premises or in our office; complete P & L service monthly plus all State and Federal tax work by our professional tax board.

"For the business man who has the time and wishes to post his own books, we have available for this par-

ticular business a complete bookkeeping system with full posting instructions and includes the preparation of the Federal and State income taxes by our professional tax board.''

.   .   .   .   .   .

''HERE IS WHAT WE DO:

''1. Install a system—designed for your business.

''2. Furnish all materials.

''3. Show you what to give us—So simple it can be done in 10 minutes a day.

''4. All bookkeeping is done in our office under expert supervision.

''5. Your bookkeeping material is picked up by us 2 times a month and promptly returned.

''6. From the complete records maintained by us we prepare for you:

''a. Monthly profit and loss statement (with percentage breakdown).

''b. Monthly (or Quarterly) sales tax reports.

''c. Quarterly payroll returns (both Federal and State).

''d. Income tax returns (both Federal and State).

''e. Social security (self employed).

''f. Estimated income tax returns.

''g. County assessor reports (property tax).

''h. Statement of net worth (when requested).

''i.

"7. Free Business Control Consultation.

> (A complete discussion of your business management problems anytime, at your convenience in our office.)"

The record further shows that in selling the bookkeeping and tax service, the defendant's sales personnel stress the bookkeeping service afforded and avoid use of the terms "Public Accountant" and "Certified Public Accountant".

If the businessman chooses the "personalized bookkeeping and tax service", as distinguished from purchasing the system and doing his own bookkeeping, he is instructed to place all memoranda of sales, purchases, expenses, wages paid, payroll deductions, etc., in a plastic case given him for that purpose by the defendant. The bag is picked-up by a representative of the defendant, either monthly or semi-monthly, and is taken to the defendant's local office, where the information thus supplied by the customer is grouped in categories listed on the defendant's copyrighted bookkeeping ledger form, totaled, and then posted. These totals are then transferred to the appropriate blank spaces on the printed profit and loss statement, to reflect the cash flow of the customer's business. From the information shown in the ledgers, the defendant also files the monthly and quarterly State and Federal tax returns, such as, sales, excise, employment, social security, etc.

At the end of the year, the defendant prepares the customer's income tax returns, based upon the figures reflected by its ledger and upon other information supplied by the customer, such as inventory and capital items which can be depreciated.

When requested, the defendant makes a "net worth statement." To do this, it is necessary that the customer supply the defendant with the amount of its cash on hand, cash in the bank, inventory, supplies, fixed assets, depreciation, receivables, payables, accrued taxes, etc., as this information is not reflected by the elementary, single-entry bookkeeping system of the defendant. This information is then shown on the standardized, copyrighted "net worth" form.

It should be noted that, throughout the above described operations, the defendant makes no attempt to verify any information supplied it by the customer, but basically limits itself to recording information. Further, the defendant does not certify any statement prepared by it, nor does it furnish any information to any bank, or credit agency, or for use in any court action.

Does the business activity of the defendant, as above described, constitute the practice of public accountancy, which is prohibited to corporations?

Section 62-126, Tennessee Code Annotated, provides that "[n]o person shall engage in the practice of public accountancy in this state unless such person is a holder of a license to practice public accountancy issued by the board." This section further provides that its provisions "shall not apply to bookkeepers who keep sets of books and prepare tax reports for more than one employer as employees, nor * * * to part-time bookkeeping if the gross income from such part-time bookkeeping does not exceed twenty-five per cent (25%) of the gross income received by the bookkeeper from his or her regular employment, provided that such part-time bookkeeper prepares no statements as a public accountant and does not

otherwise represent himself or herself to be a public accountant.''

In section 62-127, Tennessee Code Annotated, the practice of public accountancy is defined ''as holding oneself out to the public as skilled in the knowledge, science and practice of accounting; as qualified and ready to render professional services therein as a public accountant or certified public accountant for compensation, and performing such work of an accountant for more than one employer on a fee basis, or otherwise, in any of the following services: auditing; devising and installing systems; recording and presentation of financial information or data; compiling tax returns; preparing financial statements, schedules, reports, and exhibits for publication, credit purposes, use in courts of law and equity, and for other purposes. Provided, that the casual preparation of tax returns, the income from which service does not exceed twenty-five per cent (25%) of the gross income from regular employment shall not be construed as the practice of public accounting if no representation is made that the person performing such casual service is a public accountant. * * *''

■ The Courts have generally recognized that the practice of public accountancy is a highly skilled and technical business or profession and, as such, may be regulated by the legislature within proper limits. See 70 A.L.R.(2d) 435 and cases there cited, including Johnson v. Crenshaw, 164 Tenn. 278, 47 S.W.(2d) 557; Campbell v. McIntyre, 165 Tenn. 47, 52 S.W.(2d) 162; Davis v. Allen, 43 Tenn.App. 278, 307 S.W.(2d) 800. However, the Courts consistently have held that legislation which prohibits noncertified accountants from practicing the profession of accountancy is invalid as it infringes upon

rights of contract in matters of purely private concern bearing no perceptible relation to the general or public welfare. And, in so doing, the Courts have indicated that bookkeeping and similar technical services—as contrasted with auditing and expressing opinions on financial statements—do not involve a sufficient public interest to permit legislative interference with the normal right of an individual to deal with anyone he chooses, so long as the person rendering such services does not assume a title or designation which might be confused with "public accountant" or "certified public accountant", or which might indicate to the public that he is licensed to practice in either capacity. Florida Accountants Association v. Dandelake, Fla., 98 So.(2d) 323, 70 A.L.R.(2d) 425; Frazer v. Shelton, 320 Ill. 253, 150 N.E. 696, 43 A.L.R. 1086; 70 A.L.R.(2d) 447; 1 Am.Jur.(2d), Accountants, Sec. 3, p. 359. See also Moore v. Grillis, 205 Miss. 865, 39 So.(2d) 505, 10 A.L.R.(2d) 1425, holding unconstitutional an amendment to their accountancy statute, Code 1942, Sec. 8905 et seq. (which does not prohibit the practice of accounting by a non-certified accountant) providing that only an attorney or a certified public accountant could prepare a tax return for compensation.

The editor, in 1 Am.Jur.2d, Accountants, Sec. 3, states the status of the law thus:

"Legislation prohibiting noncertified accountants from practicing the profession of accountancy has been declared invalid, and unwarranted regulation of private business and the right of a citizen to pursue the ordinary occupations. Such a statute abridges rights of private property and infringes upon rights of contracts in matters of purely private concern bearing no per-

ceptible relation to the general or public welfare, and denies uncertified accountants equal protection of the laws. This is quite different from prohibiting one from practicing accountancy who holds himself out as a certified public accountant without having received certification from the state allowing him to do so. So long as one does not use the statutory title 'certified public accountant' or 'public accountant' or any other designation that might mislead or deceive the public, one has every right to work at his chosen profession and to call himself 'accountant' rather than 'bookkeeper.' "

In the recent case of Davis v. Allen, 43 Tenn.App. 278, 307 S.W.(2d) 800, wherein the constitutionality of the Act now under consideration, as applied to one holding himself out as a "public accountant", was upheld, this Court stated:

"The State, under its police. power, may pass laws to protect the public against fraud, deception, or the consequences of ignorance and incapacity, and may exact the requisite degree of skill and learning of persons in professions and pursuits which affect the public health or welfare, such as the practice of law, medicine and surgery, dentistry, chiropractic, optometry, nursing, pharmacy, architecture, accountancy, and even plumbing and barbering." Citing cases.

"The act before us recognizes public accountancy as one of such professions. It defines the practice of public accountancy as 'holding oneself out to the public' as skilled in the science and practice of accounting, as qualified to render professional service as such accountant, and performing such services, under the conditions stated. As observed by the learned Chan-

cellor, public accountancy now embraces many intricate and technical matters dealing with the many kinds of tax laws, unfair trade practices, rate regulations, Blue Sky laws, Stock Exchange regulations, reports required by various governmental agencies, financial statements, etc.

"So, in this view of the practice of public accountancy, it is such a skilled and technical profession and so affects the public welfare that the State may properly regulate it as is done in this act. Similar acts have generally been upheld in other states."

\* \* \* \* \* \*

"This act does not touch the right of private contract where there is no holding out to the public. *It applies only to professional public accountants and certified public accountants holding themselves out to the public as qualified, and rendering such professional services to the members of the public.*" [emphasis supplied]

■ Considering the above quoted statutory definition of the practice of public accountancy (T.C.A. sec. 62-127) in the light of the above authorities, we are of the opinion that only those persons who, in holding themselves out to the public as skilled in the knowledge, science and practice of accounting and as qualified and ready to render professional accounting services, represent themselves to be either a public accountant or a certified public accountant and perform the work of an accountant for more than one employer are practicing public accounting and must be licensed.

■ In the present case, it is clear that the defendant held itself out to the public as qualified to render, and did render to more than one employer, several of the

services enumerated in the above code section, notably, the installing of a bookkeeping system, the recording and presentation of financial information or data, and preparation of tax returns. It is equally clear that, in doing so, the defendant did not represent itself as skilled in the knowledge, science and practice of accounting or as a "public accountant" or a "certified public accountant." To the contrary, the defendant, in both its literature and solicitation of business, emphasized that it performed bookkeeping and similar technical services only, and did not do any auditing, verification of accounts, or certification of financial statements.

We conclude, therefore, that the Chancellor correctly held that the business activity of the defendant did not constitute the practice of public accountancy.

The State earnestly and plausibly insists that, when the statutory definition of the "practice of public accountancy" is read in conjunction with the express exemption of certain bookkeepers from the application of the Public Accountancy Act (T.C.A. sec. 62-126), it becomes apparent that the legislature intended to provide that anyone, whether a bookkeeper or an accountant, who performs any one of the services enumerated in T.C.A. sec. 62-127 for more than one employer is engaged in the practice of public accounting and must be licensed—excepting therefrom only (1) those who keep books for more than one employer *as an employee*, (2) those who keep books on a part-time basis in addition to their regular employment, and then only if their earnings from the part-time bookkeeping does not exceed 25% of their gross income from their regular employment, and (3) those whose income from the casual preparation of tax

returns does not exceed 25% of the gross income from their regular employment.

■ Admittedly, the Act is subject to this construction. However, the effect of such a broad construction, in our opinion, would make the statute unconstitutional as an unwarranted regulation of private business and the right of a citizen to pursue the ordinary occupation of book-keeper and/or accountant, and would be an unwarranted infringement on the right of contract in matters of purely private concern bearing no perceptible relation to the general or public welfare.

In Campbell v. McIntyre, 165 Tenn. 47, 52 S.W.(2d) 162, wherein the Court considered and held unconstitutional an Act defining the practice of public accountancy as performing accounting work, as distinguished from bookkeeping, on a fee basis for more than one employer— a definition much less inclusive than the one urged on us by the State—the Court stated:

"This preference is unreasonable and arbitrary, because it is an unreasonable and arbitrary restriction upon the right of private contract to require examination and approval as a condition precedent to the right of persons to pursue the occupation of accounting under private contract with other persons or business enterprises. Incompetent performance of such contracts does not directly affect the public, but affects only the parties thereto. If a governmental certificate of solvency were required as a condition to the right of individuals to purchase goods on credit, or to borrow money, the general public might be remotely benefited, but the requirement would clearly be an unwarranted invasion of private business by governmental author-

ity. The public interest in private auditing contracts is no more apparent. In our opinion, whatever of benefit might accrue to the public from the restriction here involved must yield to the rights of private contract guaranteed by the Constitution; such benefit being too remote and indefinite to render the restriction reasonable.''

See also Florida Accountants Association v. Dandelake, Fla., 98 So.(2d) 323, 70 A.L.R.(2d) 425. Cf. Witschey, ''CPAs and Noncertified Practitioners'', The Journal of Accountancy, Dec., 1960, wherein it is stated:

''Thus, in a sense, the legislatures, the courts, and the Treasury Department agrees in distinguishing between two levels of work—and of competence—within the very general field of accounting.

''They have recognized that ''certified public accountant'' is a professional designation, and that its restriction to qualified persons is justified in the public welfare. But the courts and the Treasury Department have indicated their disapproval of granting to anyone the *exclusive* right to perform bookkeeping and similar technical services, and to prepare Federal income tax returns.

''Accordingly it appears that the traditional function of certified public accountants — the auditing and expression of opinion on financial statements, on which third parties may rely—remains as the only function endowed with sufficient public interest to justify legal restriction of the right to perform it to certified public accountants and licensed public accountants.''

The State also insists that the Chancellor, having made a finding that the public logically could infer from de-

fendant's statement in its advertising brochure that it maintained a staff of tax experts that the tax experts were either attorneys or accountants, erred in failing to find and decree that the defendant was engaged in the practice of public accounting.

The record reveals that the Chancellor included the following statement in his memorandum opinion:

"Defendant's representations with regard to maintaining a staff of tax experts do give the Court concern. It does not amount to a holding out to the public that defendant is doing public accounting, but an inference can logically be drawn that the tax experts are either attorneys or accountants."

and enjoined the defendant from soliciting business on that basis and ordered that the defendant delete that portion of defendant's advertising material.

The State takes the position that the above finding, when coupled with the actual compilation of tax returns by defendant's employees, constitutes a finding that the defendant was engaged in the "practice of public accounting" within the definition set forth in T.C.A. sec. 62-127, otherwise, the Chancellor exceeded his authority in enjoining any of the activities of the defendant.

We think the State's insistence that defendant's business activities constituted the "practice of public accountancy" is completely answered and negated by our discussion above.

As to the insistence that the Chancellor exceeded his authority in enjoining any of the activities of the defendant unless those activities constituted the practice of public accountancy, it should be noted that this issue

is not before us for decision. The defendant, whose future activities would be affected in a slight degree by the injunction, did not object to the Chancellor's action but acquiesced therein, being of the opinion that the injunction was "entirely reasonable and within his [the Chancellor's] discretion" in view of his concern that the public might be misled by the defendants' advertising material.

For the reasons above stated, the decree of the Chancellor is affirmed. Costs incident to the appeal are adjudged against the State.

McAmis, P. J., and S. J. Milligan, Special J., concur.