*Decision will be entered under Rule 155.*

WILLIAM D. GLENN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1110–73. Filed May 30, 1974.

---

■ ■

*Harry McNutt*, for the petitioner.
*Robert B. Nadler*, for the respondent.

FORRESTER, *Judge:* Respondent has determined a deficiency of $225.36 in petitioner's 1970 Federal income taxes. The sole issue for our decision is whether or not petitioner may deduct expenses he incurred in taking a review course and in sitting for the C.P.A. exam in Tennessee.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

William D. Glenn, petitioner, was a resident of Nashville, Tenn., at the time he filed the petition herein. He filed his 1970 calendar year Federal income tax return with the director, Internal Revenue Service Center, Chamblee, Ga.

Petitioner received a bachelor's degree in accountancy from Austin Peay State University in 1956. On March 8 of that year, the State Board of Accountancy of Tennessee approved his application to practice as a public accountant, a practice petitioner has continued through the time of the trial in the instant case. From 1959 through 1963, petitioner was employed in Nashville as a staff accountant by John S. Glenn Associates (Associates), a firm which merged with the national accounting firm of Peat, Marwick, Mitchell & Co. (Peat, Marwick), in 1963. Petitioner continued his employment with Peat, Marwick until 1970.

From approximately the time of the merger, petitioner held the position of senior accountant with Peat, Marwick. As senior accountant, petitioner trained recent college graduates entering the firm, was in charge of audits, and supervised and reviewed the work of other staff accountants before its submission to a manager at the firm. Petitioner was also involved in the setting up of budget and bookkeeping systems for clients of the firm.

On numerous dates between 1960 and 1970, petitioner sat for the Tennessee certified public accountant examination. Passing such exam would have enabled petitioner to hold himself out as a certified public accountant (C.P.A.), a title considered a prerequisite to promotion to the positions of manager or partner in Peat, Marwick's Nashville office. Whereas 85 to 90 percent of the accountants in that firm's Nashville office were C.P.A.'s, all the managers and partners held such title.

On a statewide basis, there were 1,941 C.P.A.'s in Tennessee in 1970, and 945 public accountants. Numerous other individuals did accounting work in Tennessee without any license from the State. In 1970, 1,141 candidates sat for the C.P.A. exam, while only 51 sat for the public accounting test.

Two months prior to the November 1970 C.P.A. exam, petitioner attended a review course for the exam offered by Peat, Marwick for its employees. Petitioner also enrolled in the semiannual certified public accountant review course offered by the University of Alabama (the Alabama course). This course, which lasted the entire month of October, covered the general areas of accounting theory and practice, auditing, and commercial law. Petitioner was familiar with all these areas both from prior studies, and from his work in such areas with Associates and Peat, Marwick. The Alabama course emphasized the organization and analysis of numerous accounting and commercial concepts, with time also devoted to instruction concerning exam-taking techniques. While the course at Peat, Marwick was given in the evening after work, petitioner attended the Alabama course at the University of Alabama campus on a full-time basis for the entire month of October. The daily schedule for the course on weekdays called for a study period between 8 a.m. and 12 noon, lectures and discussions between 1 p.m. and 5 p.m., and discussions and supervised problem work from 7 p.m. to 10 p.m. in the evenings. Lectures, discussions, and supervised problem work sessions were also held on Saturdays between 8 a.m. and 4 p.m.

After completing the review course, petitioner sat for the C.P.A. exam in Memphis on November 4, 5, and 6 of 1970. He was not successful on the exam. Later that year, on December 1, petitioner withdrew from Peat, Marwick, and established his own public accounting firm. Among his employees at such firm are five C.P.A.'s.

On his 1970 individual return, petitioner took deductions for the following items in the amounts indicated:

C.P.A. review course at Alabama:

| | | |
|---|---|---|
| Tuition | $300.00 | |
| Food | 192.50 | |
| Motel | 303.94 | |
| Parking | 29.25 | |
| Travel | 68.40 | $894.09 |

C.P.A. examination:

| | | |
|---|---|---|
| Examination | 25.00 | |
| Lodging and meals | 58.50 | 83.50 |

In his statutory notice, respondent has determined that these expenses were personal and has disallowed them in full, but he has stipulated that these amounts were paid and that they were reasonable.

Petitioner is a licensed public accountant in Tennessee. In 1970, in preparation for the C.P.A. exam required to be taken by all candidates for C.P.A. licenses, petitioner took a special review course at the University of Alabama. In claiming that the expenses incurred in taking such courses are deductible, petitioner relies mainly on section 1.162–5(a), Income Tax Regs., which provides in part as follows:

(a) *General rule.* Expenditures made by an individual for education (including research undertaken as part of his educational program) * * * are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education—

(1) Maintains or improves skills required by the individual in his employment or other trade or business, * * *

It is petitioner's position that the expenses incurred in taking the Alabama course are clearly the type of educational expenses which come within the purview of the above-cited regulation, and that he is thus entitled to a section 162(a) [1] deduction for such expenses.

Respondent makes two arguments in opposition to a deduction. First, he contends that the Alabama course should not be considered "education." Thus, according to respondent, section 1.162–5, Income Tax Regs., is not relevant in the instant situation. We reject this position and find that the expenses incurred in taking the Alabama course do constitute the type of educational expenses whose deductibility must be examined under the language of section 1.162–5, Income Tax Regs.

It is true, as respondent points out, that all the subjects included in the Alabama course had already been covered by petitioner in earlier courses in college and elsewhere, and that his real purpose in taking the course was to pass the C.P.A. exam. However, these facts do not compel us to find that the course lacked educational substance. As we have indicated above, a substantial part of the course curriculum was devoted to the analysis and organization of accounting and commercial law concepts, with additional work on specific problem situations in these areas. Petitioner attended the course on a full-time basis on the Alabama campus for an entire month, with a schedule not unlike that of a student seeking a degree. We see no reason why such a course should not be considered education within the scope of section 1.162–5, Income Tax Regs.

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Respondent's regulations posit a broader definition of education than respondent is here urging. Refresher courses are explicitly mentioned as being education for purposes of the regulation. Sec. 1.162–5 (c) (1), Income Tax Regs. We fail to see such a significant difference between the course here under consideration and the common refresher-type course to warrant characterization of the one as education, but not the other. Furthermore, in one of the examples listed in the same regulation, respondent characterizes a bar review course as being education, though under the particular factual situation involved in that example, not the type of education the expenses of which may be deducted. Sec. 1.162–5 (b) (2) (iii), example (3). We find that both under respondent's regulations, as well as under what we think is the commonsense understanding of what are educational-type endeavors, that the Alabama course constituted "education" and that the deductibility of the expenses incurred in taking such course must be determined under the standards laid down in section 1.162–5, Income Tax Regs.

Having found that the expenses petitioner incurred in taking the Alabama course were educational expenses, there is no serious dispute between the parties that the course, in light of the subjects covered and their direct relevance to petitioner's daily work, maintained or improved skills required in petitioner's work as an accountant. See sec. 1.162–5 (a) (1), Income Tax Regs.

It is respondent's alternative argument that while the Alabama course may be characterized as having maintained or improved skills required in petitioner's employment, that the course also constituted education, as described in section 1.162–5 (b) (3) (i), Income Tax Regs., "which will lead to qualifying him in a new trade or business," namely certified public accounting. As respondent correctly points out, if educational expenses are incurred in connection with qualifying for a new trade or business, the fact that they also serve to maintain and improve skills required in a current trade or business does not save such expenses from characterization as either nondeductible personal expenses, or as a nondeductible aggregate of personal and capital expenditures. Secs. 1.162–5 (b) (1) and 1.162–5 (c), Income Tax Regs.; *Jeffry L. Weiler*, 54 T.C. 398, 402 (1970); *Morton S. Taubman*, 60 T.C. 814, 816–817 (1973).

The issue as we see it is one of definition; of determining what are the relevant trades or businesses involved in the instant case. It is respondent's contention that the practice of a public accountant constitutes a different trade or business from that of a C.P.A. Petitioner argues that public accountants and C.P.A.'s in Tennessee are members of a single trade or business, namely public accounting, and that

his attempt to become a C.P.A. represents an attempt to move within, as opposed to out of, his current trade or business.

We have not found a substantial case law suggesting criteria for determining when the acquisition of new titles or abilities constitutes the entry into a new trade or business for purposes of section 1.162–5 (c) (1), Income Tax Regs. What has been suggested, and we uphold such suggestion as the only commonsense approach to a classification, is that a comparison be made between the types of tasks and activities which the taxpayer was qualified to perform before the acquisition of a particular title or degree, and those which he is qualified to perform afterwards. *Ronald F. Weiszmann*, 52 T.C. 1106, 1110 (1969), affd. 443 F. 2d 29 (C.A. 9, 1971). Where we have found such activities and abilities to be significantly different, we have disallowed an educational expense deduction, based on our finding that there had been qualification for a new trade or business. *Ronald F. Weiszmann, supra.*

In the instant case, we find that the differences in potential scope of practice between a public accountant and a C.P.A. in Tennessee are significant, and that petitioner's expenses were incurred in attempting to qualify for a new trade or business. Hence, we hold that the expenses described above are nondeductible.

Under Tennessee law, public accountants and C.P.A.'s are separately licensed by the State after compliance with certain educational and examination requirements.[2] Both types of accountants are considered under State law as practicing public accounting in Tennessee, a practice defined as follows in the State accountancy statute:

"Practice" defined. The practice of public accountancy is hereby defined as holding oneself out to the public as skilled in the knowledge, science and practice of accounting; as qualified and ready to render professional services therein as a public accountant or certified public accountant for compensation, and performing such work of an accountant for more than one employer on a fee basis, or otherwise, in any of the following services: auditing; devising and installing systems; recording and presentation of financial information or data; compiling tax returns, preparing financial statements, schedules, reports, and exhibits for publication, credit purposes, use in courts of law and equity, and for other purposes. * * * [Tenn. Code Ann. sec. 62–127, as amended Mar. 10, 1965.]

The tasks listed in section 62–127, Tenn. Code Ann., are those to which the practice of a public accountant in Tennessee is limited. A C.P.A., however, in addition to being authorized to perform all the above-mentioned operations allowed to be performed by public accountants, is also qualified to perform certain other tasks not permitted the public accountant. He may "(5) advise taxpayers as to their rights and liabilities under federal or state taxing statutes as

---

[2] There is also an experience requirement for licensing as a C.P.A. Tenn. Code Ann. sec. 62–130(1). There is no dispute that petitioner needed only to pass the C.P.A. exam to become fully qualified for the C.P.A. license.

entail or are based upon accounting procedures; (6) represent taxpayers before governmental departments of the state and of the United States in matters pertaining to taxes." Sec. 62–139, Tenn. Code Ann. Furthermore, and probably most significantly of all, he may hold himself out to the public and sign his name accompanied by the designation that he is a licensed C.P.A.

Although we think the question is extremely close and not entirely free from doubt, we find these differences between the potential practice of a public accountant and that of a C.P.A. to be compelling and significant. The ability to undertake a tax practice appears especially significant. It is common knowledge that clients often look to their accountants for advice on the tax consequences of handling receipts and expenses in a certain way, of electing a particular method of depreciation, and so on. Unlike the public accountant, the C.P.A. is not only able to advise as to such matters, but may also actively represent his client if recourse to a governmental board or agency is deemed appropriate, or is required. Furthermore, unlike the public accountant, the C.P.A. is able to hold himself out to the public as qualified and able to advise and represent clients as to tax matters, thus opening up to him the potential of attracting a substantial practice in tax, an area whose importance in the modern business world is undeniable. In effect, in tax matters, the ability of a C.P.A. is not so unlike that of an attorney, a comparison which clearly cannot be made in the case of a public accountant.

In addition, C.P.A. status is considered in Tennessee, according to the uncontradicted and sworn statement of the secretary of the Tennessee State Board of Accountancy, as representing a higher level of professional competence than the status of public accountant. Thus, it may be expected, as is clearly commonly thought in the business world, that an opinion and certification from a C.P.A. is considered more valuable and authoritative than such from a public accountant. And, at least in petitioner's old firm, Peat, Marwick, advancement to the positions of partner and manager—positions offering wider responsibility and substantial increases in compensation to an accountant—is contingent on the attainment of C.P.A. status.

Petitioner does not dispute that these differences in potential practice between a C.P.A. and public accountant are significant, but raises instead three other arguments. He first points out that, had he passed the exam and become a C.P.A., he would still have been performing the same types of tasks for Peat, Marwick, as he had as a public accountant. While such assertion may be correct, the touchstone of section 1.162–5(c)(1), Income Tax Regs., is only whether or not the education taken will lead to qualification in a new trade or business. Here, as we have found above, the education was directed to so qualify

petitioner, and the fact that had he passed the exam, he may not have performed any of the tasks previously not allowed him as a public accountant is simply irrelevant in determining deductibility. See *Jeffry L. Weiler*, 54 T.C. at 401–402.

Petitioner next urges that it should be deemed significant that he already had a license to practice public accounting in Tennessee. The possession of a license, he points out, distinguishes his situation from that of an unlicensed accountant attempting to become licensed. For such an accountant could not hold himself out to the public, according to petitioner, as one skilled in the practice of accounting. Petitioner's possession of a license to practice public accounting, however, does not affect our conclusion in the instant case. For, while it is true that petitioner's license set him apart from other unlicensed accountants in Tennessee who could not hold themselves out as skilled and knowledgeable in public accounting, *Davis* v. *Allen*, 43 Tenn. App. 278, 307 S.W. 2d 800, 803 (1957) ; *State* v. *Bookkeepers Business Service Co.*, 53 Tenn. App. 350, 382 S.W. 2d 559 (1964), the mere fact that one may be licensed to practice as a public accountant in no way precludes us from finding that there were in fact three types of accounting trades or businesses in Tennessee: unlicensed accounting, public accounting, and certified public accounting. In view of the significant differences in scope of practice between public accountants and C.P.A.'s, we refuse to hold that these two separately licensed groups should be considered to be within one trade or business in Tennessee for purposes of respondent's regulation.

Finally, petitioner cites as requiring a decision in his favor the following example in respondent's regulation:

C, while engaged in the private practice of psychiatry, undertakes a program of study and training at an accredited psychoanalytic institute which will lead to qualifying him to practice psychoanalysis. C's expenditures for such study and training are deductible because the study and training maintains or improves skills required by him in his trade or business and does not qualify him for a new trade or business.

As is implicit in our discussion above, however, the issue of whether or not the acquisition of new skills and abilities constitutes a new trade or business involves, essentially, a factual finding as to the significance of such new capabilities. We have found as a fact that there is a significant difference between the potential practice of a public accountant and that of a C.P.A. in Tennessee. That respondent has reached a different conclusion as to psychiatrists and psychoanalysts is simply not controlling on the distinct facts of the instant case.

As to the expenses he incurred in actually taking the exam, our analysis above would lead us to deny any deduction if we were to consider such expenses as having been incurred for educational purposes.

However, even were we to find that such expenses were not for education, and hence must instead be scrutinized under the general case law interpreting section 162(a), we could allow no deduction. Much like the bar-admission expenses we found nondeductible in *Arthur E. Ryman, Jr.*, 51 T.C. 799 (1969), the expenses of taking the exam here were incurred in connection with the attempt to acquire new abilities the value of which would be realized over petitioner's lifetime. That petitioner was apparently unsuccessful on the exam is unfortunate, but clearly not a relevant consideration in determining the character of the expense incurred. As with the Alabama course expenses, we hold that petitioner is not entitled to deduct the expenses he incurred in taking the C.P.A. course.

*Decision will be entered for the respondent.*