DAVID COOPER and PATRICIA COOPER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cooper v. Commissioner
Docket No. 6125-76
United States Tax Court
T.C. Memo 1978-117; 1978 Tax Ct. Memo LEXIS 395; 37 T.C.M. (CCH) 529; T.C.M. (RIA) 780117; March 27, 1978, Filed Russell G. Kvanvig, for the petitioners. Stewart C. Walz, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the taxable year 1973 in the amount of $180. Concessions having *396 been made, the sole issue for decision is whether petitioners are entitled to an education expense deduction of $871 claimed pursuant to section 162, Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioners David M. Cooper and Patricia I. Cooper filed their joint Federal income tax return for 1973 with the Internal Revenue Service Center, Ogden, Utah. Petitioners resided in Twin Falls, Idaho, at the time they filed their petition in this proceeding. Patricia Cooper is a party to this action only because she filed a joint return for 1973 with her husband. Therefore, David M. Cooper will be referred to as petitioner. Petitioner graduated from Boise State College in 1971 with a Bachelor of Business Administration degree in accounting. Beginning November 3, 1969, petitioner was employed by the Internal Revenue Service as a student trainee in accounting. He became a revenue agent on May 16, 1971, acquired tenure as a revenue *397 agent on November 3, 1972, and resigned on June 23, 1973. After his resignation and for the remainder of 1973, petitioner was employed as an accountant by the Twin Falls, Idaho, accounting firm of Severn, Ripley, Doorn and Co. (hereinafter the firm). His job was described functionally as "tax specialist." Petitioner continued to be employed by the firm until it merged into the accounting firm of Haskins and Sells some time after 1973, whereupon he became employed by Haskins and Sells. At the time of trial, petitioner was employed by Haskins and Sells as an accountant with the title "tax manager." In 1973, the firm's only educational requirement for new employees was possession of either a Bachelor of Science or a Bachelor of Arts degree; petitioner met the requirement. The firm did not require that its new employees be certified public accountants (hereinafter CPA's) or become CPA's, but only CPA's could become partners in the firm according to the rules of professional ethics contained in Idaho law. The firm encouraged but did not require its employees and partners to undertake continuing education programs. After choosing a course, one would submit it to the partners of *398 the firm for approval as an acceptable continuing education effort. Approved plans would merit time off with pay plus limited expense reimbursement. After becoming employed by the firm, petitioner submitted the Becker Certified Public Accountant Review Course (hereinafter the course) to the firm for continuing education approval. The partners of the firm approved the course because they perceived it as a beneficial review of the materials that petitioner studied in college and because it would aid petitioner to pass the CPA examination, which they knew he would take. Petitioner chose the course as the best available to provide him with an update and review of his knowledge of accounting, but also knowing that he would sit for the CPA examination. From October 15, 1973, to November 3, 1973, petitioner attended the course in Los Angeles, California, at a total cost of $1,121. Pursuant to the continuing education reimbursement policy of the firm, petitioner was granted time off with pay to attend the course and additionally was reimbursed $250. In 1974, petitioner took and passed the CPA examination in Idaho. No changes occurred in petitioner's duties as a result of taking *399 the course or passing the CPA examination. Both before and after each of those events, he was responsible for tax planning, review of tax returns, and supervision of some client engagements which were not limited to tax matters. Firm policy dictated, and petitioner's duties reflected, that tax controversies proceeding beyond the level of District Conference with the Internal Revenue Service would be handled by an attorney rather than by any qualified member or employee of the firm. In Idaho in 1973, those who practiced accounting as certified public accountants were engaged in a different trade or business than those who practiced accounting without the benefit of certification (hereinafter non-CPA's). On their joint 1973 Federal income tax return, petitioner and his wife claimed an education expense deduction for unreimbursed expenditures made by petitioner in connection with taking the course. The amount of the deduction taken was $871, which represents the difference between petitioner's actual expenditures ($1,121) and the firm's reimbursement to petitioner ( $250). Respondent disallowed the deduction in its entirety on the ground that the expenditure was made to establish *400 or qualify petitioner for a new trade or business. ULTIMATE FINDING OF FACT The education expenses paid by petitioner for the CPA review course were part of a program of study pursued by him leading to his qualification for a new trade or business. OPINION Petitioner, a tax accountant with a CPA firm, took the Becker Certified Public Accountant Review course in 1973 and passed the Idaho CPA examination in 1974. On his 1973 Federal income tax return, petitioner deducted the unreimbursed portion of the cost of the course as an expense for education pursuant to section 162. Respondent disallowed the deduction. In the statutory notice of deficiency, respondent relied on section 1.162-5(b)(3), Income Tax Regs., which states in part: (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses * * * are [sic] expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. * * * At trial, respondent *401 also relied on section 1.162-5(b)(2), Income Tax Regs., which states in part: (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses * * * are [sic] expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. * * * The parties to the instant case agree that the expenses incurred by petitioner are deductible if not disqualified by either of the above regulations. The quoted regulations provide objective tests for determining the deductibility of an educational expense. The test of section 1.162-5(b)(3), Income Tax Regs., is whether the education taken will lead to qualification in a new trade or business. The validity of this regulation has been established and is not questioned here. Weiszmann v. Commissioner,52 T.C. 1106, 1111 (1969), affd. 443 F.2d 29 (9th Cir. 1971). Petitioner testified at trial that one of his *402 reasons for taking the course was its benefit to his preparation for the CPA exam. The course certainly was education which was part of petitioner's program of study leading to qualification as a CPA in Idaho. The only question that remains for our decision is whether qualification as a CPA in Idaho constituted qualification in a new trade or business for petitioner. If it did, then respondent must prevail. In order to decide whether qualification as a CPA in Idaho in 1973 constituted qualification in a new trade or business, we must contrast the types of tasks and activities that petitioner was qualified to perform as a non-CPA with those that he would be able to perform as a CPA. Weiszmann v. Commissioner,supra at 1110. Note that the foregoing test focuses on the types of tasks and activities that petitioner is able to perform and not on the types of tasks and activities that he actually performs. Weiszmann v. Commissioner,supra at 1111; Glenn v. Commissioner,62 T.C. 270, 276 (1974). Idaho law governing the practice of accounting during 1973 contained the following statement of purpose: SECTION 1. PURPOSE *403 OF ACT.--Recognizing that to practice as a certified public accountant is a privilege granted by the State of Idaho and is not a natural right of individuals, it is deemed necessary as a matter of state policy in the interest of public welfare to provide laws and provisions covering the granting of the privilege and its subsequent use, control, and regulation to the end that the public shall be properly protected against unprofessional, improper, unauthorized and unqualified practice as a certified public accountant and from unprofessional conduct by a person licensed to practice as a certified public accountant, all of which enhances the confidence of the public and the business community on sound financial reporting and advice on business affairs. [Ch. 284, 1963 Idaho Sess. Laws 732 sec. 1 (1963).] Following this statement of purpose were sections which: (1) made it unlawful to represent that one was certified when one was not certified or when one's certification had been revoked or suspended; (2) specified the qualifications needed by an individual to obtain certification; (3) established the State Board of Accountancy and set forth its duties and powers; (4) enumerated the *404 grounds on which revocation or suspension of certification would have occurred; (5) set forth the rules of professional ethics that bound those who were certified; and (6) provided procedures relating to revocation or suspension of certificates. Ch. 284, 1963 Idaho Sess. Laws 732, sec. 2 et seq. (1976). State law regulated certification, licensing, and practice as a CPA in Idaho. No similar law regulated non-CPA's. Qualification as a CPA was accomplished by a combination of education, experience and examination. There were no prerequisites to the practice of accounting by non-CPA's. Following certification, a CPA was bound by both the statutory rules of professional ethics and the rules and regulations promulgated by the State Board of Accountancy, and he was subject to revocation and suspension powers of the State Board of Accountancy. No similar constraints limited the practice of accounting by non-CPA's. Only a CPA could join with another CPA in partnership to practice accounting. In sum, state law limited use of the designation "certified public accountant" and policed the actual practice of accounting by CPA's but reserved no functional realm to the exclusive practice *405 of CPA's. On the other hand, state law provided that a non-CPA could not hold himself out as being a CPA and was not subject to the strict regulation attendant to certification but could perform the same accounting functions that a CPA could perform. No functional distinction between CPA's and non-CPA's was imposed by Idaho law during 1973. Therefore, a member of the public could have chosen to hire either a CPA or a non-CPA to perform any given accounting function. This similarity of potential practice tends to establish a unity of trade or business for CPA's and non-CPA's. Hoever, the statutory statement of purpose quoted above indicated an intent to assure the public that CPA's had met certain minimum standards of qualification and conduct. Such intent was carried out in the statutory provisions which regulated education, licensing, and practice of CPA's. In uncontradicted testimony, a member of the Idaho State Board of Accountancy for the year in issue stated that, because CPA's were subject to such regulation, they were considered to have demonstrated a higher level of professional competence than non-CPA's. In light of this testimony and the statutory regulation outlined *406 above, we have found as a fact that a higher level of professional competence was demonstrated by CPA's than by non-CPA's in Idaho during 1973. Federal regulation reserves certain privileges of accounting practice to CPA's. Ordinarily, only attorneys, CPA's and enrolled agents are allowed to practice before the Internal Revenue Service. 31 C.F.R. sec. 10.3 (1971). Petitioner was not qualified for such practice prior to attainment of CPA status. Prior to certification, he was considered no different than a member of the general public and qualified only for the following limited practice before the Internal Revenue Service: (1) unlimited representation of self or specified related taxpayers; (2) representation outside the United States; (3) participation in rule making pursuant to the Administrative Procedure Act, 5 U.S.C. sec. 553 (1976); (4) representation of taxpayers for whom a return was prepared and signed as having been prepared, but limited to representation "before revenue agents and examining officers of the Audit Division in the *407 offices of District Directors (but not at the District Conference in a District Director's office)"; and (5) special appearances authorized by the Commissioner of Internal Revenue. 31 C.F.R. sec. 10.7 (1970). The privileges afforded a CPA evidence a significant difference between the tasks and activities that petitioner could perform as a non-cpa/ and those that he could perform after certification. We faced a similar fact situation in Glenn v. Commissioner,62 T.C. 270 (1974). The petitioner in Glenn was a public accountant licensed to practice in Tennessee. He deducted the cost of a course taken as a review for the Tennessee CPA examination. We upheld respondent's determination and disallowed petitioner's education expense deduction because the course was one taken in the course of qualifying for a new trade or business, that of CPA. We concluded that in Tennessee the trade or business of a CPA was different than that of a licensed public accountant. We so concluded because there was a significant difference between the types of tasks and activities which the petitioner there was qualified to perform before acquiring CPA status *408 and those which he would have been qualified to perform after acquiring CPA status. [2] We found that in Tennessee both CPA's and licensed public accountants were qualified to perform the following services: * * * auditing; devising and installing systems; recording and presentation of financial information or data; compiling tax returns, preparing financial statements, schedules, reports, and exhibits for publication, credit purposes, use in courts of law and equity, and for other purposes. * * * [Tenn. Code Ann. sec. 62-127, as amended Mar. 10, 1965.] We concluded, however, that there were sufficiently significant differences between practice as a CPA and practice as a licensed public accountant to outweigh the foregoing similarities of practice. First, we found that CPA status in Tennessee indicated a higher level of professional competence than licensed public accountant status. Second, only CPA's were allowed to designate themselves as CPA's and hold themselves out as CPA's.Third, Tennessee law allowed only CPA's to advise and *409 represent taxpayers regarding state and Federal taxes. Fourth, only a CPA could become a partner in the firm for which petitioner in Glenn had worked. All of the foregoing factors are similar in the instant case, and our determination in Glenn controls the decision we reach here. After analyzing the facts, contrasting the types of tasks and activities that petitioner was qualified to perform as a non-CPA with those he was qualified to perform as a CPA, and giving due weight to our decision in Glenn v. Commissioner,supra, we ultimately have found that those who practiced accounting as certified public accountants in Idaho during 1973 were engaged in a different trade or business than those who practiced accounting without the benefit of certification. We also have found that the course was taken as part of petitioner's program of study leading to qualification as a Certified Public Accountant. Therefore, the education expenses incurred by petitioner fall within the prohibition of section 1.162-5(b)(3), Income Tax Regs., and are non-deductible. Accordingly, we need not address respondent's alternate contention that the *410 course constituted education required of petitioner to meet the minimum education requirements for qualification in his employment or other trade or business. Decision will be entered for the respondent. Footnotes
1. All Code section references are to the Internal Revenue Code of 1954, as amended.↩
2. The petitioner in Glenn v. Commissioner,62 T.C. 270↩ (1974), was unsuccessful in his attempt to pass the examination.