STATE of Tennessee PERSONNEL RE-
CRUITING SERVICES
BOARD, Appellee,

v.

John HORNE, d/b/a John Horne &
Associates, Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

April 3, 1987.

Application for Permission to Appeal
Denied by Supreme Court
June 1, 1987.

---

H. Tom Kittrell, Jr., Nashville, for appellant.

J. Michael Cody, Atty. Gen., and Reporter, C. Blair Scoville, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

CANTRELL, Judge.

Acting on a complaint filed by the Tennessee Personnel Recruiting Services Board, the Chancery Court of Davidson County enjoined the appellant from operating an Executive Search Firm without the license required by T.C.A. § 62–31–101, et seq. The appellant contends that the act as applied to him violates his constitutional rights to due process, equal protection, and the freedom to contract.

In 1984 the Tennessee legislature passed the Tennessee Personnel Recruiting Services Act which requires all persons conducting a personnel recruiting service to obtain a license from the Tennessee Personnel Recruiting Services Board. T.C.A. § 62–31–105. A personnel recruiting service is defined in the act as any person who for a recruiting fee or other compensation: (A) places or attempts to place candidates seeking employment; (B) recruits or attempts to recruit employees for employers seeking candidates; (C) purports to have access to job leads; or (D) performs outplacement services. T.C.A. § 62–31–102.

The appellant operates a firm that performs retainer-based executive search and outplacement counseling. A retainer-based executive search firm works on retainer for employers who are seeking qualified executives. The search firm receives payment regardless of whether a suitable candidate is found. In performing outplacement services, the search firm seeks employment for an employee who has been discharged by the client-company.

The appellant's firm usually deals with the director of personnel, the senior vice-president, or the president of the client-company. The positions which the search firm seeks to fill usually carry a salary in the range of $30,000 to $150,000 a year. Unlike the typical employment agency, the appellant does not have any contract with the job candidate; the appellant's sole contractual obligation is to the company that employs him.

The appellant asserts that as applied to his business the provisions of T.C.A. § 62–31–101, et seq., have no reasonable relationship to the maintenance of public health, safety, morals, or welfare, and, therefore, the act impairs his right to contract, deprives him of the equal protection of the law, and takes his property without due process of law. In this assertion the appellant has stated the limits on the power of the state to enact legislation that regulates the conduct of an otherwise legitimate business.

[T]he Legislature of the State cannot prohibit an ordinary business but it may, however, regulate the business to promote the health, safety, morals or general welfare of the public. The guarantees of the Constitution imply the absence of arbitrary restraint, but not immunity from reasonable regulations and prohibitions imposed in the interest of the people of the state. *Ford Motor Company v. Pace*, 206 Tenn. 559, 335 S.W.2d 360, 362 (1960).

Stated differently, the appellant's position is that his business is such an ordinary calling or business pursuit that it falls out-

side the scope of regulation by the state under its general police power. *See Livesay v. Tennessee Board of Examiners in Watchmaking*, 204 Tenn. 500, 322 S.W.2d 209 (1959); *State v. Bookkeepers Business Service Company*, 53 Tenn.App. 350, 382 S.W.2d 559 (1964). The state's power has been described in the following terms:

> "This police power … embraces all matters reasonably deemed necessary or expedient for the safety, health, morals, comfort, domestic peace, private happiness, and welfare of the people." *McKesson & Robbins, Inc. v. Government Employees Department Store, Inc.*, 211 Tenn. 494, 365 S.W.2d 890, 892 (1963).

■ Thus we come back to the original question: Does the legislation in question promote the public health, safety, domestic peace and welfare? In answering this question, we start with a presumption that it does, i.e., that the act is constitutional. *Tennessee Board of Dispensing Opticians v. Eyear Corp.*, 218 Tenn. 60, 400 S.W.2d 734 (1966). The burden of proof rests on the one attacking the statute to show otherwise. *State ex rel. Maner v. Leech*, 588 S.W.2d 534 (Tenn.1979). The act will be upheld if it can be justified upon any rational ground *McConnell v. City of Lebanon*, 203 Tenn. 498, 314 S.W.2d 12 (1958), if any possible reason can be conceived to justify it, or if the reasonableness of the act is fairly debatable. *Phillips v. State*, 202 Tenn. 402, 304 S.W.2d 614 (1957).

■ In our opinion the appellant has failed to carry his burden of showing that the act is unrelated to the preservation of the public health and welfare. While it is true that the appellant performs most of his services under contract with large businesses, he does hold himself out to a substantial segment of the public as one having expertise in finding applicants for the positions held by his clients. The proof of that expertise is in performance; we are not persuaded that the appellant would remain in business long if he never filled one of the positions he was retained to fill. Therefore there exists a compulsion to find suitable candidates and persuade them to accept the positions offered by the appellant's clients. A decision to accept one of those positions is of such magnitude that it should be free of any hint of misrepresentation or coercion. The act in question imposing ethical duties and responsibilities on firms such as that of the appellant results from a legitimate effort by the legislature to protect the public welfare.

■ The appellant also complains that the act contains arbitrary and impermissible classifications because it does not cover:

(1) Agencies engaged solely in the procurement of employment for public school teachers and administrators;

(2) Employment services established and operated by the state, any political subdivision of this state, or the United States;

(3) Labor union organizations;

(4) Musician booking agencies;

(5) Nurses registries; or

(6) Temporary employment service contractors.

In *Knowlton v. Board of Law Examiners of Tennessee*, 513 S.W.2d 788 (Tenn. 1974), our Supreme Court held that under the traditional equal protection test the act in question will be upheld if the state can show some rational connection between the classification and a legitimate state purpose. The court also held that the legislative classification carried a strong presumption of validity. Thus, the same burden is on the appellant to show that the classifications in question are arbitrary or that no grounds can be conceived to justify them. *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969).

In this case the appellant in his proof in chief did not offer any evidence on the rationality of the classifications made by the act. The only proof on this question came on cross-examination of the chairman of the Personnel Recruiting Services Board. That testimony is reproduced here in full:

Q. (By Mr. Kittrell) Why would the Legislature seek to exempt temporary

employment service contractors from this?

A. Because a temporary service contractor is the employer of the temps that are out working; that is like a direct hire.

Q. Now, let me ask you this: You've got a lot of experience in the personnel field. Isn't it true that a lot of times, if these—that these temporaries go ahead and place their employee who is working temporarily with the employer that's using them temporarily?

A. That does happen, yes.

Q. And don't they take what's called a liquidation fee for doing that?

A. Some take the 'liquidation fee and some don't.

Q. So all the evils that are associated with the employment industry can befall somebody that's working with a temporary employment service just as well as it can befall somebody that's gone to strictly an APF firm, can't it?

A. Generally the employer is paying the salary or the charge for that temporary, and it's over either an eight- or 12–week liquidation.

Q. Well, a temporary employment service contractor gets money for placing this temporary with a permanent employer, don't they? They get those bucks; they get the money for doing that.

A. Not anymore than they would do if the person worked 12 weeks and then quit working.

Q. They get money for doing this placement, don't they?

A. We all get money.

Q. Right. And all the problems that are associated with the personnel industry can occur with temporary employment service contractors, can't they?

A. Yes, that is true.

Q. So why is this one kind of personnel business excluded from the law? What rational purpose would the Legislature have for excluding those people?

A. That's a question we can take up with the legislators.

Q. Right. There's really no real rational purpose, is there?

A. There may be. I'm not qualified to say.

Q. Can you come up with any rational purpose in your mind why such an exclusion would be in this law?

\* \* \* \* \* \*

Q. (By Mr. Kittrell) Okay. So I take it by your answer, then, that you can conceive of no rational purpose to exclude temporary service contractors?

A. They aren't—I can conceive, yes. There's reasons why they should and why they shouldn't be under the regulation. Not many people go to work for a temporary service on a full-time basis with a company. It's a very seldom type thing.

Q. Now, why are musician booking agents exempt from this law?

A. I have no idea.

Q. Why are nurses' registries exempt from this law?

A. They've handled their own over the years.

Q. They're in-house employers, aren't they?

A. Yes.

Q. Does that tend to put John Horne into a kind of arbitrary class when he's regulated and these temporary service contractors and these nurses' registries aren't?

A. I don't feel so, no.

Q. All right.

A. We're here to administer the laws as written, not to interpret.

The most that can be said for this proof is that it may cast some doubt on the classifications made by the legislature; but the proof falls far short of overcoming the strong presumption in favor of the act. The appellant concedes that there is a rational basis for excluding agencies securing employment for public school teachers and placement services operated by the state or United States. We think the testimony above shows a good reason why temporary employment service contractors are exempt. Without any proof on how labor union organizations, ˙ musician booking agencies, and nurses registries work, or

why there is a similar need to impose on them the regulations called for in the act, we can only apply the presumption that a good reason exists for leaving them out.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

LEWIS, J., and LLOYD TATUM, Special Judge, concur.